UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY, and 3M COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>ILLINOIS TOOL WORKS, INC. , and ITW FINISHING, L.L.C.,<br><br>Defendants. | Civil No. 06-2459 (JRT/FLN)<br><br>**MEMORANDUM OPINION AND ORDER** |

David J.F. Gross, James W. Poradek, Theodore M. Budd, and Chad Drown, **FAEGRE & BENSON, LLP**, 2299 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN  55402, for plaintiffs.

Robert A. Vitale, Jr., **NIRO, SCAVONE, HALLER & NIRO**, 181 West Madison Ave., Suite 4600, Chicago, IL  60602-4515; Lewis A. Remele, Jr. and Mark P. Hodkinson, **BASSFORD REMELE, P.C.**, 33 South Sixth Street, Suite 3800, Minneapolis, MN  55402, for defendants.

This is a patent case involving manufacturers of mechanisms used to mix and carry paint for spray guns.  Plaintiffs 3M Innovative Properties Company and 3M Company (collectively "3M") own a patent for the Paint Preparation System ("PPS"). 3M claims the defendants, Illinois Tool Works, Inc. and ITW Finishing, L.L.C. (collectively "ITW"), infringed on the 3M patent by producing and distributing the DeKups product.  This matter is before the court to construe disputed claim terms following entry of the parties' joint claim construction statement.

16

**BACKGROUND**

In 2000 3M released into the marketplace the PPS disposable cup system for spray guns.  Prior to introduction of the PPS system, painters at automobile and other paint shops mixed paint in separate containers and then poured the paint into a canister sitting atop a spray gun.  After a job was completed, the painter would use chemical solvents to clean the mixing containers, canister, and gun, and then restart the process with a different color of paint.

The PPS system simplified this process.  The PPS system is comprised of a plastic cup-shaped object, a plastic standalone liner that fits inside of the cup, a disposable funnel shaped lid, and a removable plastic collar that holds the lid in place.  A painter using the PPS system places the plastic liner inside of the cup and mixes the paint inside the liner.  The lid and collar are then screwed on the top of the cup, and the cup is placed inverted on top of the paint gun.  The paint empties out of the liner through the lid and into the gun where it is sprayed on the object to be painted.  After the job is complete, the painter discards the liner and lid and needs only to clean the gun before beginning the next job with a new liner and lid.

3M filed its original patent application for the PPS system in Great Britain in 1997 and in the United States in 1999. Following a five year review period, which included six office actions and several amendments, the United States Patent and Trademark Office issued U.S. Patent No. 6,820,824 (the '824 patent) for the PPS system on November 23, 2004. The '824 patent has six claims, five of which are dependent on the first claim. The independent first claim is directed to a:

fluid reservoir; a removable, collapsible liner which, prior to adding a fluid to the liner, has a shape corresponding to, and is a close fit within the interior of the reservoir, a removable lid located in an opening in the reservoir, a removable collar which secures the lid to the reservoir at the periphery of the opening, and a spray nozzle for dispensing fluid from the liner, wherein the liner collapses when fluid is withdrawn from within the liner during operation of the gun . . .

ITW launched a competing disposable cup system in 2006. The ITW product, called DeKups, is similar to the PPS system in that it is comprised of a plastic cup-shaped object, a standalone plastic liner, a disposable lid, and a plastic mechanism to secure the lid on the cup-shaped object. The DeKups product is also used in a similar manner as the PPS system. Prior to manufacturing the DeKups product, ITW manufactured metal paint reservoirs and plastic liners for metal paint reservoirs—the mechanisms that the PPS system was designed to replace.

3M filed this infringement action against ITW in June 2006. The parties filed a joint claim construction statement in February 2007 that identified six claim terms for which they were unable to agree on a definition: (1) fluid reservoir, (2) collapsible, (3) liner, (4) prior to adding a fluid to the liner, has a shape corresponding to, and is a close fit within, the interior of the reservoir, (5) removable collar, and (6) wherein the liner collapses when fluid is withdrawn from within the liner during operation of the gun. The Court held a hearing on the disputed terms on August 17, 2007.

## ANALYSIS

Claim construction is a question of law for the Court. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002). The words of the claim are generally given the ordinary and customary meaning they would have to a person of ordinary skill

in the art in question at the time of invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). To ascertain this meaning, courts look to the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning the meaning of technical terms and the state of the art. *Id.* at 1314.

The specification is the single best guide to the meaning of a disputed term. *Id.* at 1315. Courts must be cautious, however, not to read a limitation from the specification into the claims. *Id.* at 1320. If the prosecution history is part of the record the court should also consider it, but the court should remain mindful that such history often lacks the clarity of the specification and is thus less useful for these purposes. *Id.* at 1317. While the court can use extrinsic evidence, such as dictionaries or learned treatises, it is the least significant source in determining the meaning of claim language. *Id.* Such evidence must only be considered in light of the intrinsic evidence, and it cannot be permitted to establish a meaning that is clearly at odds with the claim construction mandated by the intrinsic evidence. *Id.* at 1318.

## I. DISPUTED CLAIM TERMS

For purposes of this Memorandum Opinion and Order, the Court will first set forth each party's proposed construction after each disputed term.[1]

---

[1] All of the disputed terms appear in the first claim and several appear in the remaining five claims, all of which are dependent on the first claim. The Court has set forth only the text of the first claim, but in constructing the terms the Court has considered each term in the context of the entire patent, including the specification and the five dependent claims.

**1.     fluid reservoir**

3M        a container or receptacle for supporting the liner

ITW       a receptacle with side walls and a base for supporting a liner

The parties agree a fluid reservoir involves a receptacle that supports a liner but disagree as to whether there is an additional requirement that the receptacle have a base and side walls.  3M asserts that no such requirement exists, pointing to the fact that the specification itself makes it immaterial "for the walls of the receptacle to be solid: the receptacle could, for example, have the form of a framework for containing the liner." ITW counters that the term fluid reservoir is always used in the specification to describe a receptacle with side walls and a base and that the common dictionary definition of reservoir is actually more restrictive than the definition it proposes because the dictionary definition requires a reservoir itself be capable of holding a liquid.

The definition proposed by 3M is broader than the ordinary and customary meaning of receptacle because its definition does not include the general requirements that a receptacle have side walls and a base.  Courts can use broader definitions for disputed claim terms but not without "support in the intrinsic record indicating that such a broad meaning was intended." *Nystrom v. Trex Co.*, 424 F.3d 1136, 1145-46 (Fed. Cir. 2005).  3M has cited no such support for its definition, and ITW is correct in that the specification consistently refers to the reservoir as having a base and side walls.  As a result, the Court adopts ITW's proposed definition for this term.

**2.     collapsible**

3M      capable of being distorted by application of moderate pressure without being ruptured

ITW     same

The parties identified the term collapsible as being disputed, but ITW agrees in its response brief with the definition proposed by 3M insofar as the isolated term is defined as "capable of being distorted by application of moderate pressure without being ruptured." The Court therefore adopts this definition.

**3.     liner**

3M      (a) no definition necessary
        (b) a structure that covers or lines a surface of another structure

ITW     a structure that covers or lines a surface of another structure and is formed without any pleats, corrugations, seams, joints or gussets, or any grooves at the internal junction of the side walls

ITW maintains on the basis of patent disclaimer that the term liner as used in this patent only encompasses a structure "without any pleats, corrugations, seams, joints or gussets, or any grooves at the internal junction of the side walls." 3M responds that ITW's efforts at limiting the definition of liner are misplaced and that ITW misrepresents the prosecution history of the patent.

The doctrine of patent disclaimer prevents a patentee, in this case 3M, from recapturing a specific meaning that it disclaimed during the prosecution. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). For 3M to have

disclaimed a meaning, however, it must have "unequivocally disavow[ed]" a broader definition of the term in its efforts to obtain the patent. *Id.* at 1324.

During its prosecution of this patent, 3M needed to distinguish a patent that already existed for a different disposable liner system, the Kaltenbach system. That system worked in a similar manner as 3M's PPS system, but the liner in the Kaltenbach mechanism is not cup-shaped like the 3M liner. The Kaltenbach liner is instead pouch shaped: the sides of the liner gradually come closer together until closing in a straight seam. 3M distinguished its system from the Kaltenbach system by specifying in the patent that the PPS liner has "a shape that is a close fit within the interior of the reservoir prior to adding a fluid to the liner," which it argued was an improvement over the Kaltenbach liner because there are no grooves or seams to trap paint in the PPS liner.

ITW, nevertheless, argues that the definition of liner should be limited to an object without pleats, corrugations, seams, joints, gussets, or grooves because that is how it is described in the preferred embodiment. It also argues that this is the basis on which 3M distinguished the Kaltenbach liner from its product. Those arguments, however, ignore the fact that the liner is already limited in the claims as, among other things, having a shape that is a close fit within the interior of the reservoir and that remains solid when outside of the reservoir. This is the basis on which 3M distinguished the PPS system from the Kaltenbach system and there are no grounds on which to narrow the definition any further, especially considering that any evidence resulting in a narrowed definition must be "unmistakable" and "unambiguous." *Omega*, 334 F.3d at 1325. The Court

disagrees with 3M's position that a definition is unnecessary but adopts its proposed definition.

### 4. prior to adding a fluid to the liner, has a shape corresponding to, and is a close fit within, the interior of the reservoir

3M    (a) no definition necessary
(b) the liner has a shape as the interior of the reservoir before fluid is added to the liner so that the liner fits within the reservoir with little space between the exterior of the liner and the interior of the reservoir

ITW    the exterior of the liner is formed to have the same geometrical shape and size as the interior walls and base of the reservoir before fluid is added to the liner so that the exterior of the empty liner is in contact with the interior side walls and base of the reservoir when the liner is inserted into the reservoir

The crux of the dispute over this term is whether the liner must be in contact with and have the same "geometrical shape" as the reservoir. ITW maintains that the patent specification makes clear that such requirements exist, pointing to examples in the specification wherein the liner is described as being an "accurate" or "exact" fit inside the reservoir. Even assuming the terms in the specification dictate that the liner be in contact with the reservoir or have the same geometrical shape, the terms of the claim only direct that the liner be a "close fit." The Court is to avoid using elements of the specification to limit claim terms, *see Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1325 (Fed. Cir. 2003), and it declines to do so in this case because any such construction would contradict the ordinary meanings of the terms. The Court again disagrees with the position of 3M that a definition is unnecessary but adopts its definition.

**5.     removable collar**

3M        (a) no definition necessary
          (b) a removable ring-like device

ITW      a removable ring-shaped device used to hold the removable lid to the periphery of the reservoir opening

3M contends that its definition more accurately encompasses the definition of removable collar as that term is used in the patent and that the latter half of the definition proposed by ITW is unnecessary in any event because it merely restates the next line in the claim. ITW argues that 3M's proposed definition is vague and inaccurately defines removable collar.

The first claim in the patent describes a "removable collar which secures the lid to the reservoir at the periphery of the opening." Based on this claim language, the Court agrees with 3M that the latter half of ITW's definition is unnecessary and confusing. 3M's proposal to use the term "ring-like" is troubling, however, because that term itself is ambiguous and capable of various meanings. The Court therefore finds that the "ring-shaped" portion of the definition proposed by ITW more accurately describes the collar, but the Court also incorporates into the definition the word removable to clarify the description. The Court, then, adopts the following definition of removable collar: a removable ring-shaped device.

**6.     wherein the liner collapses when fluid is withdrawn from within the liner during operation of the gun**

3M      wherein the liner distorts without being ruptured when fluid is withdrawn from within the liner during operation of the gun

ITW     the base of the liner keeps its shape while the side walls distort without rupture

The final disputed definition concerns the term collapses as it relates to base of the liner. ITW contends that the claim describes the base of the liner maintaining its shape when the paint is withdrawn. 3M contends that no such requirement exists. ITW finds support for its position in the specification because the need for a sturdy base is often highlighted and because the side walls are the only parts of the liner described as being distorted. The Court has already noted that the terms of a specification should not be used to make restrictions on the claims of a patent when the terms as used in the claims do not have such restrictions, and it will not do so for this term. Given that there is no requirement in the claims that the base maintains its exact shape when fluid is withdrawn, the Court adopts the definition proposed by 3M.

## ORDER

Based on the foregoing, all the records and files herein, the Court hereby **ADOPTS** the construction of the claim terms as set forth in the Memorandum accompanying this Order.

DATED: October 23, 2007             s/ John R. Tunheim_
at Minneapolis, Minnesota.           JOHN R. TUNHEIM
                                     United States District Judge